IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY JESUS MARCUS, | § | |
| ID # 02136900, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:23-CV-316-B-BW |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| Respondent. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the amended Petition for a Writ of Habeas Corpus by a

Person in State Custody, received on March 30, 2023.  (Dkt. No. 5.)  Based on the

relevant filings and applicable law, the Court should **DENY** the petition with

prejudice.

## I.  BACKGROUND

Anthony Jesus Marcus, an inmate of the Texas Department of Criminal

Justice, Correctional Institutions Division ("TDCJ-CID"), filed a habeas corpus

petition under 28 U.S.C. § 2254 challenging a 2017 conviction and 70-year sentence

in Dallas County, Texas.  (*See* Dkt. No. 5 at 2.)[2]  The respondent is the Director of

TDCJ-CID ("State").  (*See id.* at 1.)

---

[1] By Special Order No. 3-251, this habeas case has been automatically referred for full case management.  By Special Order No. 3-354, it was transferred and reassigned to the undersigned on August 23, 2024.  (*See* Dkt. No. 21.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

## A. State Court Proceedings

In 2016, a Dallas County grand jury indicted Marcus in Cause No. F16-30422-M on one count of murder.  (*See* Dkt. No. 17-22 at 4); *State v. Marcus*, No. F16-30422-M (194th Jud. Dist. Ct., Dallas Cnty., Tex. June 23, 2016).   Marcus pled guilty as charged and elected to have a jury assess his punishment.  (*See* Dkt. No. 17-1 at 144; Dkt. No. 17-4 at 4-6.)  Following a jury trial on punishment, the jury sentenced Marcus to 70 years of imprisonment in the TDCJ-CID and assessed a fine of $10,000.  (*See* Dkt. No. 17-1 at 143; Dkt. No. 17-22 at 9-11.)

On appeal, the Texas Fifth Court of Appeals modified the judgment to reflect that Marcus entered a guilty plea to the offense and an affirmative finding on use of a deadly weapon, namely a firearm; as modified, the court affirmed the judgment. (Dkt. No. 17-11 at 4); *Marcus v. State*, No. 05-17-00655-CR, 2018 WL 4940855, at *2 (Tex. App.—Dallas Oct. 12, 2018, pet. ref'd).  The Texas Court of Criminal Appeals ("TCCA") refused Marcus's petition for discretionary review.  (*See* Dkt. No. 17-19); *Marcus v. State*, No. PD-1277-18 (Tex. Crim. App. Mar. 27, 2019).

On June 15, 2020, the state trial court received Marcus's state habeas application.  (*See* Dkt. No. 17-22 at 16-34.)  Marcus's state trial counsel and co-counsel, a private investigator appointed to assist state trial counsel, and Marcus's state appellate counsel submitted affidavits in response to claims raised in the state habeas application and related filings.  (*See* Dkt. No. 17-23 at 7-34, 43-56; Dkt. No. 17-24 at 6-9.)  The state habeas court issued findings of fact and conclusions of law

recommending that Marcus's state habeas claims be denied. (*See* Dkt. No. 17-24 at 11-43.) On August 23, 2023, the TCCA denied Marcus's state habeas application without written order on the findings of the state habeas court without a hearing and on its independent review of the record. (*See* Dkt. No. 16-1 at 34-39); *Ex parte Marcus*, No. WR-91,845-01 (Tex. Crim. App. Aug. 23, 2023).

## B. Substantive Claims

In his amended § 2254 petition, Marcus asserts grounds for relief based on ineffective assistance of state trial counsel and prosecutorial misconduct. (*See* Dkt. No. 5 at 6-7.) The State filed a response on September 14, 2023. (*See* Dkt. No. 16.) Marcus filed a reply on December 4, 2023. (*See* Dkt. No. 20.) Because resolution of some grounds for relief may impact some of the remaining claims, the Court addresses them in an order different than that presented by Marcus.

## II. APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") substantially changed the way federal courts handle habeas corpus actions by, in part, imposing a relitigation bar to obtaining relief. *See, e.g.*, *Neal v. Vannoy*, 78 F.4th 775, 782 (5th Cir. 2023) (citations omitted). Under the AEDPA, a state prisoner may not obtain federal habeas relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). A state habeas application that is denied without written order by the TCCA is an adjudication on the merits for purposes of § 2254. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" standard, a court may grant habeas relief "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The "unreasonable application" inquiry is an objective one, rather than a subjective one. *See id.* at 409.

Section 2254(d)(2) concerns questions of fact. *See Martin*, 246 F.3d at 475. Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both express and implied factual findings. *See Ford v. Davis*, 910 F.3d 232, 234-35 (5th Cir. 2018).

Section 2254 thus creates a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation and quotation marks omitted). This highly deferential standard applies even when a state habeas application is summarily denied without written order. *See Harrington*, 562 U.S. at 103. In the absence of a reasoned state court decision, a court "'must determine what arguments or theories . . . could have supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court.'" *Sexton v. Beaudreaux*, 585 U.S. 961, 965 (2018) (quoting *Richter*, 562 U.S. at 102). To overcome this standard, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Failure to make this showing precludes federal habeas relief. *See id.* at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. PROSECUTORIAL MISCONDUCT

In his third ground, Marcus contends that he "was denied due process of law due to the highly prejudicial and inflammatory remarks made by the prosecutor during the State's closing arguments." (Dkt. No. 5 at 7.) Specifically, he complains that, during the State's closing arguments, the prosecutor: (1) "argued that Petitioner's defense was 'offensive.' (striking over counsel's shoulder)"; (2) "argued that only 1 percent of relationships end up in an obs[]es[s]ive party killing his partner. (arguing facts not in evidence)"; (3) "argued for a high sentence because Petitioner might get out and do the same thing to another girl. (future dangerousness)"; (4) "[i]nterject[ed] his personal opinion that he would view society and the jury negatively if they didn't return a long sentence"; (5) made "inflammatory remarks about the number of times the complainant was shot"; and (6) "interject[ed] personal philosophy on the meaning of 'love.'" (*Id.*)

Marcus raised this claim in his state habeas application. (*See* Dkt. No. 17-22 at 25-26.) In recommending denial of this claim, the state habeas court first identified four "approved general areas of argument": "(1) summation of the evidence, (2) reasonable deduction of the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement." (Dkt. No. 17-24 at 14 (citing *Hathorn v. State*, 848 S.W.2d 101, 117 (Tex. Crim. App. 1992).) It stated that an argument that "exceeds the permissible bounds of these approved areas . . . will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts

6

harmful to the accused into the trial proceeding." (*Id.* (citing *Todd v. State*, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980).) The state habeas court concluded that the portions of the prosecutor's closing arguments with which Marcus took issue "did not amount to improper arguments." (*Id.* at 15.) The TCCA denied Marcus's claim on these findings and its independent review when it denied Marcus's state habeas application. (*See* Dkt. No. 16-1 at 34-39.)

To be entitled to federal habeas relief based on alleged prosecutorial misconduct, a petitioner must show that the challenged prosecutorial action was improper and that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The alleged misconduct must render the trial fundamentally unfair to constitute a due process violation, and a trial is not fundamentally unfair unless "there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (citation and internal quotation marks omitted).

Here, except for Marcus's second-listed basis of alleged improper closing argument, his bases for relief on this claim fall squarely within the proper areas of jury argument. Specifically, the prosecutor's characterization of Marcus's mitigation defense as "offensive" and statements about the number of times Marcus shot the victim summarize or are reasonable deductions from the evidence, while the allegation that the prosecutor "argued for a high sentence because Petitioner might

get out and do the same thing to another girl" constitutes a proper plea for law enforcement.  (Dkt. No. 5 at 7); *see also Carmen v. State*, 358 S.W.3d 285, 300 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) ("Just as it is a proper plea for law enforcement to argue the relationship between the present verdict and the deterrence of future crimes, it is also proper to argue the relationship between the present verdict and incapacitating the defendant from committing future crimes.").  Similarly, the prosecutor's statements about the meaning of love and his questioning of society,[3] read in context, are not improper because they directly respond to the defense's arguments that Marcus was driven by love when he murdered the victim and that the jury favorably take Marcus's lack of premeditation into account in determining his sentence, respectively.  (*See* Dkt. No. 17-7 at 158-64.)

Marcus's remaining complaint pertains to the prosecutor's statement during closing that "[w]e are talking about less than one percent of society, the kind of person who says, 'I can become so obsessive over someone that I will take their life if they do not return that to me.'"  (Dkt. No. 17-7 at 152; *see also* Dkt. No. 5 at 7.)  Even assuming, for purposes of this petition only, that the statistic delivered by the prosecutor was an improper non-record fact, such an error is non-constitutional in nature and must be disregarded unless it affected Marcus's substantial rights.  *See*

---

[3] Although unclear, Marcus's allegation that the prosecutor "[i]nterject[ed] his personal opinion that he would view society and the jury negatively if they didn't return a long sentence," appears to refer to the following statement of the prosecutor during closing: "And I'm sorry, if you want to give him credit because he didn't premeditate a murder, then I don't know what to believe in society anymore."  (Dkt. No. 5 at 7; Dkt. No. 17-7 at 165; *see also* Dkt. No. 17-22 at 25-26.)

*Lopez v. State*, No. 05-21-00989-CR, 2023 WL 2806254, at *3 (Tex. App—Dallas Apr. 6, 2023, no pet.). Marcus has provided no facts or evidence to show that his substantial rights were affected by the non-record statistic, especially given that it comprised a minimal part of the prosecutor's closing arguments and in light of the extensive record evidence supporting Marcus's sentence. *See id.* ("To determine whether [the defendant's] substantial rights were affected, we balance the severity of the misconduct (i.e., the prejudicial effect), any curative measures, and the certainty of the punishment assessed absent the misconduct.").

Further, Marcus fails to provide any facts or evidence to show a reasonable probability that the outcome of his punishment trial might have been different, i.e., his sentence less harsh, absent the alleged prosecutorial misconduct. His conclusory statement referencing prejudice is insufficient to make this showing.[4] *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("'[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'"). Accordingly, because his claim of prosecutorial misconduct is without merit, he fails to show that the TCCA's rejection of it was unreasonable. Marcus is therefore not entitled to § 2254 relief on this claim, and the Court should deny it.

---

[4] In connection with this ground, Marcus also parenthetically states, "(Cumulative Effect)." (Dkt. No. 5 at 7.) To the extent this parenthetical statement can be liberally construed to assert an argument for § 2254 relief based on cumulative error of the state prosecutor's alleged improper arguments, the claim fails because, as the Court has explained, Marcus's allegations individually are without merit. *See United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992) ("Because we find no merit to any of [the defendant's] arguments of error, his claim of *cumulative* error must also fail."). The Court therefore should deny Marcus's claim of prosecutorial misconduct on this additional basis.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his first, second, and fourth grounds for relief, Marcus contends that his state trial counsel rendered ineffective assistance.  (*See* Dkt. No. 5 at 6-7.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at 687.  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *Id.* at 697.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.  To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

10

at 694; *see Williams*, 529 U.S. at 393 n.17 (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

When a claim of ineffective assistance of counsel is adjudicated on the merits by the state habeas court, the federal court's review of the claim is conducted under the "doubly deferential" standards of both *Strickland* and 28 U.S.C. § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *see also Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017). As such, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but rather, "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

## A. Misadvice

In his first ground, Marcus contends that state trial counsel rendered ineffective assistance because she misadvised him "that he would be eligible for community supervision from the jury." (Dkt. No. 5 at 6.) He states that before state trial counsel's alleged misadvice, he "was insisting on exercising his right to trial by jury for the guilt stage," and argues that "[b]ut for trial counsel's misadvice, Petitioner would have insisted on exercising his right to a jury trial on guilt." (*Id.*; *see also* Dkt. No. 20 at 1.)

11

Marcus raised the substance of this claim in his state habeas application and provided a June 2020 affidavit from his mother to support his argument that state trial counsel advised him that he was eligible for community supervision. (*See* Dkt. No. 17-22 at 21-22, 33.) In affidavits responding to the claim in the state habeas proceedings, state trial counsel and state trial co-counsel discussed several times during which they advised Marcus that he would not be given or was not eligible for community supervision on the charge of murder and confirmed that he understood that. (*See* Dkt. No. 17-23 at 7-8, 16-17, 20-22, 27, 30, 44.) In recommending that the state habeas application be denied, the state habeas court quoted from state habeas counsel's affidavits and found that Marcus "was duly advised by counsel that community supervision was not an option for a conviction of the offense of murder." (Dkt. No. 17-24 at 12-13; *see also id.* at 14.) The TCCA denied the claim on these findings and its independent review when it denied Marcus's state habeas application. (*See* Dkt. No. 16-1 at 34-39.)

Here, the state habeas court's reliance on the affidavit testimony of state trial counsel and finding that Marcus was duly advised that community supervision was not available on his charged offense of murder was not unreasonable. In his reply, Marcus relies on state trial counsel's pre-trial filing of an application for community supervision to support his position that state trial counsel advised him that he was eligible for community supervision and that the state habeas court's findings were unreasonable. (*See* Dkt. No. 20 at 3-5.) According to Marcus, "[t]he only <u>credible</u> explanations for why trial counsel filed an application for community supervision, if

12

she knew for certain that Marcus was not eligible, was to deceive Marcus into pleading guilty based on a promise that he would be eligible; or, trial counsel was not aware of the change in Texas law rendering community supervision prohibited by a conviction for murder. (*Id.* at 4 (emphasis in original).) His argument is without merit. State trial counsel averred that she filed the application "in an abundance of caution" and that Marcus was informed it had been filed "but that with the current charge of Murder, he was <u>not</u> eligible for probation." (Dkt. No. 17-23 at 20 (emphasis in original).) The testimony indicates that state trial counsel prophylactically filed the application in the event that circumstances changed as the proceedings progressed, such as if the State later agreed to charge Marcus with a lesser offense that would render him eligible for community supervision. On this record, Marcus has failed to overcome the presumption of correctness that applies to the state habeas court's factual findings, and he has not shown that state trial counsel's performance was deficient under the first prong of *Strickland*.

Further, to demonstrate prejudice under the second prong of *Strickland* in the guilty plea context, a petitioner must ultimately show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Marcus has not made that showing here. To support his claim, he offers only his own conclusory post hoc statements and the post hoc affidavit testimony of his mother to show that he would not have pled guilty at the guilt/innocence stage of the trial and would have proceeded to trial absent state trial counsel's alleged deficiency,

13

which are insufficient to carry his burden.  *See Lavigne v. Hooper*, No. 23-30807, 2025 WL 1904564, at *7 (5th Cir. July 10, 2025) (unpublished) ("But the necessary proof to support an ineffective-assistance-of-counsel claim cannot from '*post hoc* assertions from a defendant about how he would have pleaded by for attorney's deficiencies.'") (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017)).  Marcus identifies no "contemporaneous evidence to substantiate [his] expressed preferences" regarding how he would have pled absent state trial counsel's alleged deficiency, and therefore fails to satisfy the second prong of *Strickland*.  *Lee*, 582 U.S. at 369; *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

Having failed to satisfy both prongs of *Strickland*, Marcus fails to show that state trial counsel rendered ineffective assistance by allegedly misadvising him that he was eligible for community supervision, and he fails to show that the TCCA's rejection of his claim was unreasonable under the doubly deferential standard applicable to the claim.  *See Richter*, 562 U.S. at 105.  Accordingly, the Court should deny the claim.

## B.  Sudden Passion Jury Instruction

In his second ground, Marcus contends that state trial counsel was ineffective in connection with a jury instruction on the special issue of sudden passion.  (*See*

14

Dkt. No. 5 at 6.)   Stating that "had the jury found that Petitioner acted out of sudden passion, [it would have] reduced Petitioner's maximum exposure from life or 99 years to 20 years," Marcus complains that state trial counsel "nullified the [sudden passion] instruction by arguing that the jury impose a sentence beyond the maximum for sudden passion." (*Id.*)  He also complains that state trial counsel "never made any credible argument for a finding of sudden passion." (*Id.*)  He posits that "[t]here is a reasonable probability that the jury would have found for sudden passion had trial counsel not abandoned the defense during closing arguments." (*Id.*)  Marcus raised this claim in his state habeas application. (*See* Dkt. No. 17-22 at 23-24.)

In Texas, "a murder committed under the immediate influence of sudden passion arising from adequate cause is a second-degree felony carrying a maximum punishment of twenty years' imprisonment." *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013) (internal quotation marks omitted).  "'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed . . . which passion arises at the time of the offense and is not solely the result of former provocation." *Hart v. State*, 667 S.W.3d 774, 777 n.1 (Tex. Crim. App. 2023) (quoting Tex. Pen. Code § 19.02(a)).  "Adequate cause" is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.*; *see also Naasz v. State*, 974 S.W.2d 418, 425 (Tex. App.—Dallas 1998, pet. ref'd) (holding

15

a defendant's testimony about being upset and angry from a culmination of events did not amount to adequate cause).

The record shows that the state trial court instructed the jury on the special issue of sudden passion at the end of Marcus's punishment trial, and that the jury found that Marcus did not murder the victim under sudden passion. (*See* Dkt. No. 17-1 at 136-38, 142.)  In affidavits responding to Marcus's claim during the state habeas proceedings, state trial counsel averred that the "trial testimony was not consistent with 'adequate cause' to shoot [the victim] in the head two times and was not consistent with 'under the immediate influence' of Sudden Passion." (Dkt. No. 17-23 at 31; *see also id.* at 46-47.)  Therefore, "[a]s a trial strategy, Sudden Passion was not strongly emphasized or strenuously argued for fear that the prosecutor could strongly rebut the arguments and further inflame the jury." (*Id.* at 31; *see also id.* at 46-47.)  State trial counsel further averred that the defense's closing argument requesting a sentence "for 'no more than 25 years' was a strategic trial strategy decision made because the State's case was strong, and anything less would have lost credibility with the jury." (*Id.* (emphasis omitted).)

In recommending denial of the claim, the state habeas court noted that "[d]espite Sudden Passion being in the charge, the defense elected as a trial strategy not to emphasize this issue [of sudden passion] given the facts did not give rise to the issue of adequate cause for Sudden Passion and '. . . *for fear that the prosecutor could strongly rebut the arguments and further inflame the jury.*'" (Dkt. No. 17-24 at 13 (emphasis in original).)  The state habeas court found that state trial counsel's "trial

strategy to not argue the issue of sudden passion did not meet the required threshold set forth in *Strickland* to be deemed ineffective[.]" (*Id.*; *see also id.* at 14.)  The TCCA denied the claim on these findings and its independent review when it denied Marcus's state habeas application.  (*See* Dkt. No. 16-1 at 34-39.)

Here, Marcus fails to show resulting prejudice under the second prong of *Strickland*.  He complains about purported inconsistencies within state trial counsel's affidavits in the state habeas proceedings to support his claim.  The record as a whole, however, does not support Marcus's interpretation of state trial counsel's affidavit testimony.  For example, consistent with state trial counsel's affidavit testimony, the record shows that state trial counsel elicited mitigation testimony during the punishment trial on which the defense based its arguments for the inclusion of a sudden passion instruction.  (*See, e.g.*, Dkt. No. 17-7 at 141-44.)  State trial counsel referenced the same testimony during closing arguments to plead for compassion and a sentence of no more than 25 years.  (*See id.* at 158-64.)

Although Marcus complains that state trial counsel "never made any credible argument for a finding of sudden passion," he fails to identify the existence of any such credible or meritorious argument that counsel could or should have made, especially given the evidence at trial and the law applicable to a finding of sudden passion. (Dkt. No. 5 at 6.)  He provides no facts or evidence showing a reasonable probability that his punishment would have been less harsh had state counsel further emphasized sudden passion at closing or pled for a sentence that was no higher than

the maximum available for a sudden passion finding.[5]  His conclusory and

unsubstantiated allegations of prejudice are insufficient to satisfy his burden under

the second prong of *Strickland*, and he therefore fails to show that state trial counsel

rendered ineffective assistance as alleged.[6]  *See Ross*, 694 F.2d at 1011.  Because he

has failed to satisfy his burden under *Strickland*, he also has failed to show that the

TCCA's denial of the claim was unreasonable under the applicable doubly

deferential standard of review.  Accordingly, he is not entitled to § 2254 relief on this

claim, and the Court should deny it.

## C.  Failure to Object

In his fourth ground, Marcus contends that state trial counsel rendered

ineffective assistance because she "failed to object to the highly prejudicial and

inflammatory closing arguments made by the prosecutor during the State's closing

arguments[.]"  (Dkt. No. 5 at 7.)  The statements to which Marcus refers are those

raised in his third ground for relief.  (*See id.*)

Marcus raised this claim in his state habeas application.  (*See* Dkt. No. 17-22

at 29-30.)  In affidavits responding to the claim in the state habeas proceedings, state

---

[5] To the extent Marcus contends that state trial counsel "nullified" the jury instruction on sudden passion, his conclusory allegation is unsupported by the record.  As noted, the jury was instructed on sudden passion in the jury charge, and jurors are presumed to follow the instructions of the court.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Marcus identifies no evidence in the record to show that the jurors failed to consider the sudden passion instruction because state trial counsel "nullified" it during closing arguments.

[6] Because his allegations fail to demonstrate resulting prejudice under *Strickland*, the performance prong need not be addressed.  *See Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

trial counsel stated that "there is no showing that any of the arguments made by the prosecutor during closing arguments were improper and there is no law supporting this allegation," and that even if the arguments were improper, "the failure to object [was] within the scope of sound trial strategy because an objection might draw attention to facts that could have amplified the sentence." (Dkt. No. 17-23 at 32; *see also id.* at 9, 47-48.) In recommending denial of this claim, the state habeas court found and concluded that state trial counsel's failure to object to challenged statements by the prosecutor during sentencing was "permissible trial strategy and was not ineffective." (Dkt. No. 17-24 at 15; *see also id.* at 14.) The TCCA denied the claim on these findings and its independent review when it denied Marcus's state habeas application. (*See* Dkt. No. 16-1 at 34-39.)

Marcus has not presented any facts or evidence showing a reasonable probability that the outcome of his punishment trial would have been less harsh had state trial counsel objected to the prosecutor's closing arguments as alleged. To the extent he attempts to establish prejudice by characterizing the complained-of closing arguments as "highly prejudicial and inflammatory," his allegation is conclusory and fails to satisfy his burden under the second prong of *Strickland*. (Dkt. No. 5 at 7); *see also Miller*, 200 F.3d at 282 (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."). As such, Marcus fails to show that state trial counsel was constitutionally ineffective based on a failure to object to closing arguments as

alleged and that the TCCA's denial of the claim was unreasonable.  Marcus is not entitled to § 2254 relief on this claim, and the Court should deny it.

## V.  INVOLUNTARINESS OF PLEA

Within his first ground and in his reply, Marcus contends that his "guilty plea was unintelligently made due to ineffective assistance of counsel," namely, state trial counsel's alleged misadvice regarding the availability of a sentence to community supervision, as previously discussed.  (Dkt. No. 20 at 1 (capitalization altered); *see also* Dkt. No. 5 at 6.)  Marcus raised this claim in the state habeas proceedings.  (*See* Dkt. No. 17-22 at 21-22.)  To the extent Marcus intended to raise this claim independent of his grounds of ineffective assistance of counsel, the Court addresses it.[7]

A federal court will uphold a guilty plea challenged in a habeas proceeding if the plea was knowing, voluntary, and intelligent.  *See Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985).  "This requires that the defendant understand the nature of the charges against him, the consequences of his plea, and the nature of the constitutional protection that he is waiving."  *United States v. Strother*, 977 F.3d 438, 445 (5th Cir. 2020).  An understanding of the consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine."  *Duke v. Cockrell*, 292 F.3d 414, 417

---

[7] In his state habeas application and in his § 2254 reply, Marcus's first ground for relief is stated as, "[Petitioner's/Marcus's] guilty plea was unintelligently made due to ineffective assistance of counsel."  (Dkt. No. 17-22 at 21; Dkt. No. 20 at 1.)  By contrast, in his § 2254 petition, the corresponding ground states, "Petitioner was denied effective assistance of counsel."  (Dkt. No. 5 at 6.)

(5th Cir. 2002). A court "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 582 U.S. at 369.

The record shows that when Marcus pled guilty at the guilt/innocence stage, the indictment was read to him and he confirmed that: (1) he understood he had the absolute right to plead not guilty and have a jury determine whether the State had proved its case; (2) he was freely entering his guilty plea; (3) no one forced him, made him any promises, or coerced him into pleading guilty; (4) he was pleading guilty freely and voluntarily because that was how he wished to have the case resolved; and (5) he understood that he could not change his plea once the jury accepted it. (*See* Dkt. No. 17-4 at 4-5.) In recommending denial of the claim in the state habeas proceedings, the state habeas court found that state trial counsel duly advised Marcus that community supervision was not available for his offense of murder, as the Court has previously explained, and that he "voluntarily pleaded guilty before a jury." (Dkt. No. 17-24 at 12-14.) The TCCA denied the claim on these findings and its independent review when it denied Marcus's state habeas application. (*See* Dkt. No. 16-1 at 34-39.)

Here, as the Court previously explained, Marcus has not shown a reasonable probability that he would have pled not guilty at the guilt/innocence stage and would have insisted on proceeding to trial absent state trial counsel's alleged misadvice regarding the availability of community supervision. He provides no

contemporaneous record evidence indicating that his guilty plea at the guilt/innocence stage was contingent on his alleged understanding from state trial counsel that a sentence of community supervision was possible.  Instead, he provides only his own post hoc assertions and the post hoc affidavit testimony of his mother to support his contention about how he would have pled but for counsel's alleged deficiency.  In the absence of contemporaneous evidence substantiating Marcus's purported preference to plead not guilty absent state trial counsel's alleged deficiency, he fails to show that his plea was involuntary based on the ineffective assistance of counsel as alleged.  *See Lee*, 582 U.S. at 369.  He accordingly also fails to show that the TCCA's denial of his claim was unreasonable, and the Court should deny the claim.

## VI.  RECOMMENDATION

The Court should **DENY** the amended Petition for a Writ of Habeas Corpus by a Person in State Custody, received on March 30, 2023 (Dkt. No. 5), with prejudice.

**SO RECOMMENDED** on October 9, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).